IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| M.C. | : | CIVIL ACTION |
| v. | : | |
| ANTHONY MARK BIANCHI | : | NO. 09-3240 |

-----

| M.M. | : | CIVIL ACTION |
| v. | : | |
| ANTHONY MARK BIANCHI | : | NO. 09-3241 |

-----

| E.C. | : | CIVIL ACTION |
| v. | : | |
| ANTHONY MARK BIANCHI | : | NO. 09-3243 |

-----

| A.S. | : | CIVIL ACTION |
| v. | : | |
| ANTHONY MARK BIANCHI | : | NO. 09-3247 |

MEMORANDUM

Bartle, C.J.                                                  March 25, 2011

Plaintiffs M.C., M.M., E.C., and A.S. bring these actions against defendant Anthony Mark Bianchi ("Bianchi") under the Alien Tort Statute, 28 U.S.C. § 1350. Before the court is the motion of Bianchi to dismiss the complaints for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

I.

A defendant may raise either a facial or factual challenge to subject matter jurisdiction under Rule 12(b)(1). CNA v. United States, 535 F.3d 132, 145 (3d Cir. 2008). When

reviewing a facial challenge to subject matter jurisdiction, the court accepts the plaintiff's allegations as correct and draws inferences in the plaintiff's favor. Turicentro, S.A. v. Am. Airlines, Inc., 303 F.3d 293, 300 & n.4 (3d Cir. 2002); Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). A facial challenge to subject matter jurisdiction is one in which a defendant argues that "the allegations on the face of the complaint, taken as true," are insufficient to invoke the court's jurisdiction. Turicentro, 303 F.3d at 300.

In his brief in support of the motion to dismiss, Bianchi concedes that the factual allegations of plaintiffs in the complaints are true. Accordingly, he raises a facial challenge. CNA, 535 F.3d at 145.

II.

The following facts are undisputed or taken in the light most favorable to the plaintiffs. From about December 2003 until October 2005, Bianchi traveled to several countries, including Moldova. The purpose of his travels was to meet and engage in sexual acts with young males between the ages of twelve and fifteen. Bianchi used a Moldovan citizen, Ion Gusin, as an intermediary and translator to arrange the encounters. Bianchi showered his victims and their families with gifts and money in an effort to persuade them to engage in these sexual acts. He also took them on trips to pool halls, bowling alleys, swimming pools, and hotels. When his victims resisted his advances, Bianchi raped them.

On February 1, 2007, a grand jury issued an indictment charging Bianchi with: (1) conspiracy to engage in illicit sexual conduct in foreign places; (2) traveling with the intent to engage in illicit sexual conduct; (3) engaging in illicit sexual conduct in foreign places; and (4) using a facility in foreign commerce to entice a minor to engage in sexual activity. See United States v. Bianchi, No. 06-19, 2007 WL 1521123, at *1 (E.D. Pa. May 22, 2007) (citing 18 U.S.C. §§ 2422-2423). After a jury trial, Bianchi was found guilty on ten of the twelve counts in the indictment. United States v. Bianchi, 386 F. App'x 156, 159 (3d Cir. 2010). He was sentenced to concurrent 300-month terms of imprisonment on each of the counts on which he was convicted. Id. at 159. On appeal, the United States Court of Appeals for the Third Circuit affirmed. See id. at 162.

Plaintiffs are underage male Moldovan citizens. Bianchi concedes that he engaged in sex with each of them. On July 22, 2009, plaintiffs filed complaints in this court for monetary damages against Bianchi. We held the actions in suspense pending the resolution of Bianchi's appeal of his criminal convictions. Bianchi now moves to dismiss the complaints for lack of subject matter jurisdiction.

### III.

The Alien Tort Statute ("ATS") provides that "district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. It

-3-

is undisputed that plaintiffs, as citizens of Moldova, are aliens and bring claims stemming from sexual assault which, of course, is a tort.  Accordingly, we turn to the question of whether the acts of Bianchi violate either "the law of nations" or a "treaty of the United States."  Kadic v. Karadzic, 70 F.3d 232, 238 (2d Cir. 1995).  This is a matter that goes to the question of this court's subject matter jurisdiction.  See, e.g., Sosa v. Alvarez-Machain, 542 U.S. 692, 729 (2004); Kadic, 70 F.3d at 238.  Because plaintiffs assert only a violation of the "law of nations" under the ATS, we will not determine if Bianchi transgressed a "treaty of the United States."[1]

      The Supreme Court has addressed the ATS only once, in Sosa v. Alvarez-Machain.  542 U.S. at 712-38.  Jurisprudence under the statute is sparse, and the ATS has been called a "'legal Lohengrin,'" for "'no one seems to know whence it came.'"  Id. at 712 (quoting IIT v. Vencap, Ltd., 519 F.2d 1001, 1015 (2d Cir. 1975)).  In Sosa, the plaintiff, a Mexican citizen, alleged that his abduction from Mexico to face trial in the United States for the torture and murder of a federal agent violated the ATS.  Id. at 697-99.  The Supreme Court rejected his claim on the ground that the federal courts lacked subject matter

---

1. To be actionable under the ATS, a treaty must be self-executing.  Sosa v. Alvarez-Machain, 542 U.S. 692, 734-35 (2004).  A treaty is only self-executing and thus has "automatic domestic effect" if:  (1) Congress has enacted implementing legislation; or (2) the treaty explicitly states that it is self-executing.  Medellin v. Texas, 552 U.S. 491, 505 & n.2 (2008).  However, as discussed infra, a treaty may still constitute evidence of "the law of nations," the first prong of the ATS.  28 U.S.C. § 1350.

jurisdiction.  Id. at 738.  It held that "a single illegal detention of less than a day, followed by the transfer of custody to lawful authorities and a prompt arraignment, violates no norm of customary international law so well defined as to support the creation of a federal remedy."  Id.

The Supreme Court declared that federal courts may only entertain a "very limited category" of claims under the ATS.  Id. at 712.  At the time the ATS was enacted, this category included: (1) violation of safe conducts; (2) offenses against ambassadors; and (3) piracy.  Id. at 724.  However, under Sosa federal courts are not precluded from recognizing new claims under the law of nations "on the understanding that the door is still ajar subject to vigilant doorkeeping."  Id. at 729.  These new claims must be based on norms of international law that are "'specific, universal, and obligatory.'"  Id. at 732 (quoting In re Estate of Marcos Human Rights Litig., 25 F.3d 1467, 1475 (9th Cir. 1994)). Thus, courts may not adjudicate claims for "violations of any international law norm with less definite content and acceptance among civilized nations" than those offenses historically recognized.  Id.

The law of nations "'may be ascertained by consulting the works of jurists, writing professedly on public law; or by the general usage and practice of nations; or by judicial decisions recognizing and enforcing that law.'"  Iwanowa v. Ford Motor Co., 67 F. Supp. 2d 424, 439-40 (D.N.J. 1999) (quoting United States v. Smith, 18 U.S. 153, 160-61 (1820)).  It is such

law as nations "universally abide by, or accede to, out of a sense of legal obligation and mutual concern." Flores v. S. Peru Copper Corp., 414 F.3d 233, 248 (2d Cir. 2003); see also Iwanowa, 67 F. Supp. 2d at 439 (citing Restatement (Third) of Foreign Relations § 102(2)). Treaties may constitute evidence of the law of nations. Filartiga v. Pena-Irala, 630 F.2d 876, 888 (2d Cir. 1980). As the Court of Appeals for the Second Circuit has stated:

> All treaties that have been ratified by at least two States provide *some* evidence of the custom and practice of nations. However, a treaty will only constitute *sufficient proof* of a norm of customary international law if an overwhelming majority of States have ratified the treaty, *and* those States uniformly and consistently act in accordance with its principles. The evidentiary weight to be afforded to a given treaty varies greatly depending on (i) how many, and which, States have ratified the treaty, and (ii) the degree to which those States actually implement and abide by the principles set forth in the treaty.

Flores, 414 F.3d at 256-57.

Here, in support of this court's jurisdiction, plaintiffs point to the Optional Protocol on the Rights of the Child, Sale of Children, Child Prostitution and Child Pornography ("Optional Protocol"). Jan. 18, 2002, S. Treaty Doc. No. 106-37, 39 I.L.M. 1285. The impetus behind ratification of the Optional Protocol was the "widespread and continuing practice of sex tourism." Child "sex tourism" is a term used for the growing phenomena in which individuals, generally from wealthier countries such as the United States, travel to less developed

countries to engage in illicit sexual relations with minors in exchange for money or other things of value. See, e.g., United States v. Frank, 486 F. Supp. 2d 1353, 1357 (S.D. Fla. 2007).

The Optional Protocol bans the "offering, delivering or accepting, by whatever means, a child for the purpose of ... [s]exual exploitation of the child." S. Treaty Doc. No. 106-37 at art. 3(1)(a)(i). It also declares that parties "shall ensure that all child victims of the offences described in the present Protocol have access to adequate procedures to seek, without discrimination, compensation for damages from those legally responsible." Id. at art. 9(4). Addressing the global concern behind child sex tourism, it directs that parties "shall promote the strengthening of international cooperation in order to address the root causes, such as poverty and underdevelopment, contributing to ... child sex tourism." Id. at art. 10(3).

The Optional Protocol has gained widespread acceptance, with 118 countries as signatories. They span all five continents and include such nations as Australia, Brazil, China, Great Britain, Kenya, and Mexico. The United States and Moldova, the home nations of the parties to these pending actions, are also signatories.

The United States implemented the Optional Protocol in part through the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Act of 2003 ("PROTECT Act"), the criminal statute under which Bianchi was convicted. Bianchi, 386 F. App'x at 157 (citing 18 U.S.C. §§ 2422-2423); see also Frank,

486 F. Supp. 2d at 1357. A year prior to the passage of this Act, an almost identical statute was passed in the House of Representatives called the Sex Tourism Prohibition Improvement Act of 2002. <u>United States v. Martinez</u>, 599 F. Supp. 2d 784, 807 (W.D. Tex. 2009) (citing H. R. Rep. No. 107-525 (2002)). The House report accompanying this legislation states:

> Many developing countries have fallen prey to the serious problem of international sex tourism.... Because poor countries are often under economic pressure to develop tourism, those governments often turn a blind eye toward this devastating problem because of the income it produces. Children around the world have become trapped and exploited by the sex tourism industry.

<u>Id.</u> (citing H.R. Rep. 107-525 at 2-3). This legislative history evidences concern with the "human suffering and economic evils of worldwide sex tourism and child prostitution." <u>Id.</u> at 807-08.

Over thirty-two countries have implemented legislation similar to the PROTECT Act to combat child sex tourism. <u>See, e.g.</u>, Kalen Fredette, International Legislative Efforts to Combat Child Sex Tourism: Evaluating the Council of Europe Convention on Commercial Child Sexual Exploitation, 32 B.C. Int'l & Comp. L. Rev. 1, 17-18 (2009). Additionally, courts across the United States have acknowledged that child sex tourism, the behavior for which Bianchi was convicted and now faces claims in these civil suits, is uniformly admonished by the international community as reprehensible. <u>Bianchi</u>, 2007 WL 1521123, at *1; <u>see also</u> <u>Martinez</u>, 599 F. Supp. 2d at 807-08; <u>Frank</u>, 486 F. Supp. 2d at

1357; United States v. Clark, 315 F. Supp. 2d 1127, 1131 (W.D. Wash. 2004).

Bianchi argues that, as a private individual, he cannot be held liable under the ATS. No requirement of state action is found in the plain language of the ATS. See 28 U.S.C. § 1350. Instead, "certain forms of conduct violate the law of nations whether undertaken by those acting under the auspices of a state or only as private individuals." Kadic, 70 F.3d at 239. For example, violations of the law of nations such as piracy and enslavement were historically committed by private individuals, not state actors. Id. at 239-40 (citing Restatement (Third) of Foreign Relations § 702). In fact, individual liability for human rights violations dates back to at least the Nuremberg Trials. See, e.g., Kiobel v. Royal Dutch Petroleum Co., 621 F.3d 111, 118-19 (2d Cir. 2010). Consequently, a majority of courts addressing the issue have held that individuals acting in a private capacity may be sued for violations of the law of nations under the ATS. See, e.g, Marcos, 25 F.3d at 1475; Filartiga, 630 F.2d at 888; Iwanowa, 67 F. Supp. 2d at 439; but see Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1267 (11th Cir. 2009).

The Optional Protocol recognizes the need "to reduce consumer demand for the sale of children, child prostitution and child pornography." S. Treaty Doc. No. 106-37 at pmbl. It also provides that "each State Party shall take measures, where appropriate, to establish the liability of legal *persons*" for these offenses, both criminal and civil. Id. at art. 3(4)

(emphasis added).  Thus, the Optional Protocol clearly contemplates the liability of private individuals.

Bianchi maintains that even assuming individuals acting in a private capacity may be held liable under the ATS, this liability attaches only to certain crimes.  According to him, rape outside the context of war or genocide is not actionable under the ATS.  In <u>Kadic</u>, the Court of Appeals for the Second Circuit recognized that the lower federal court had subject matter jurisdiction over women's claims under the ATS for rape by private Serbians citizens.  70 F.3d at 241-44.  However, it reasoned that the rapes were a matter of international concern because they were part of a larger scheme to destroy ethnic minorities through genocide during the Bosnian conflict.  <u>Id.</u>

Although Bianchi's conduct occurred outside of the context of war and genocide, it was directed toward underage boys from a rural, poverty-stricken community in Moldova.  Bianchi sexually assaulted them by performing oral sex and anally raping them.  <u>Bianchi</u>, 386 F. App'x at 157.  He accomplished these horrifying acts by paying the victims and their families or by using physical force.  <u>Id.</u>  Bianchi engaged in acts of child sex tourism on at least five occasions, including in Romania and Cuba.  <u>Bianchi</u>, 2007 WL 1521123, at *1, *5.  His crimes represent a global problem, whereby individuals from developed nations travel to less developed nations to prey on young children from impoverished communities.  <u>See, e.g.</u>, <u>Frank</u>, 486 F. Supp. 2d at 1357.  It is estimated that over two million children fall victim

to this type of sexual abuse each year.  Fredette, 32 B.C. Int'l & Comp. L. Rev. at 1-2 (citing Office to Monitor and Combat Trafficking in Persons, U.S. Dep't of State, Trafficking in Persons Report 24 (2008), *available at* http://www.state.gov/documents/organization/105501.pdf).

Courts have been willing to recognize claims by children under the ATS, even where the same claims would not be actionable if brought by adults.  See, e.g., Roe v. Bridgestone Corp., 492 F. Supp. 2d 988, 1019-22 (S.D. Ind. 2007).  Given the young age of his victims and the frequency with which Bianchi engaged in these heinous acts, this case is extreme enough for subject matter jurisdiction to exist under the ATS.  What occurred here is a serious transgression of international law that is "'specific, universal, and obligatory.'"  Sosa, 542 U.S. at 732 (quoting Marcos, 25 F.3d at 1475).  Under all the circumstances, we conclude that Bianchi's sexual assault of children through sex tourism falls within the "very limited category" of claims cognizable under the ATS as a violation of the law of nations.  Id. at 712.

Accordingly, the motion of Bianchi to dismiss the complaints for lack of subject matter jurisdiction under Rule 12(b)(1) will be denied.